NO. 07-03-0029-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MARCH 29, 2004



______________________________




CRYSTAL ANGEL SUGARS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE COUNTY COURT AT LAW NO. 1 OF MONTGOMERY COUNTY;



NO. 02-178458-01; HONORABLE CAMILLE DUNN, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Following appellant Crystal Angel Sugars's plea of not guilty, a jury convicted her
of driving while intoxicated, and the trial court assessed as punishment confinement for
180 days, probated for one year, and a $100 fine. With two points of error, appellant
contends the trial court erred in: (1) refusing to instruct the jury to disregard allegedly
inadmissible portions of a videotape offered into evidence by the State and failing to grant
a new trial on that basis; and (2) declining to include in its charge to the jury an instruction
under article 38.23 of the Texas Code of Criminal Procedure. (Vernon Supp. 2004). (1) We
affirm. 

 On July 26, 2002, DPS Trooper Roger Wolsey stopped appellant for speeding. 
Upon further investigation, Wolsey determined that appellant had been drinking. After
administering a number of field sobriety tests, including horizontal gaze nystagmus (HGN)
and portable breath tests (PBT), Wolsey concluded appellant met the legal definition for
intoxication and placed her under arrest. The video camera on Wolsey's patrol car
recorded his entire encounter with appellant.

 Before jury selection on the day of trial, appellant for the first time moved to
suppress that portion of the videotape in which she is seen talking to her fiance on her cell
phone and admitting to him that "she blew a point 08 on the breath test." (2) The court
granted appellant's request and ordered the State to redact that reference from the
videotape. The next day, outside the presence of the jury before the videotape was
admitted into evidence, appellant requested the trial court to view it "with regard to her
request for an attorney." (3) After the viewing, appellant moved to suppress her post-arrest
statements. In addition, she asserted the PBT was not voluntary and argued "that that also
should be suppressed." After a brief response from the State, the trial court overruled the
motion. The prosecutor then announced that, during that day's viewing of the videotape,
she had noticed two other instances in which the results of appellant's PBT were
mentioned. She suggested to the court that, in an abundance of caution, she would have
those portions redacted as well. When appellant voiced no objection to the proposal, the
court granted the State additional time to redact those portions of the videotape. 

 When the trial resumed, the State offered into evidence the redacted version of the
videotape and sought to publish it to the jury. After appellant stated, "I guess I don't have
an objection to it [the videotape] being published," the court allowed the jury to watch it. 
At the completion of the video, and after the jury had been excused for lunch, appellant 
made the following remarks:

 I've made some notes, and I noticed at 22:28 [the time stamp on the
videotape] the police officer said, You were over .08. And my understanding
of the Court's order was that you had ordered the prosecution to redact any
reference to what the scoring on the tape was or whether it was a failed test
or not. That's one of the reasons why I agreed to waive a Daubert hearing.

 And also at 22:12 on the tape [appellant] says, Well, I guess I'm over
the limit. I submit to the Court that is a direct violation of the Court's order,
and I would ask the Court to instruct the jury to disregard that portion of the
tape that was not redacted as the Court had ordered to be done. 


(Emphasis added). The State responded that appellant's complaint was untimely since
she had the opportunity to view the video in its entirety to ensure its compliance with the
court's ruling. In addition, the State maintained it had, in fact, complied with the court's
directive "to take out the part of the tape where she [appellant] mentioned at the beginning
when she was on her cell phone that she was over .08, when she was talking to her fiance
on the telephone." The court then denied appellant's requested instruction to disregard. 

 By her first point of error, appellant complains "the trial court erred and abused its
discretion in its refusal to instruct the jury to disregard inadmissible portions of State's
Exhibit No. 3 [the videotape], allowing its admission over objection and contrary to the
court's prior rulings and further abused its discretion in refusing to grant appellant a new
trial based upon this error." (4) We disagree. To preserve error for appellate review: (1) a
party must make a timely, specific objection; (2) the objection must be made at the earliest
possible opportunity; (3) the complaining party must obtain an adverse ruling from the trial
court; and (4) the issue on appeal must correspond to the objection made at trial. See Tex.
R. App. P. 33.1(a); Dixon v. State, 2 S.W.3d 263, 265 ( Tex.Cr.App. 1998). An objection
is sufficient to preserve error for appellate review if it communicates to the trial court what
the objecting party wants and why the objecting party thinks herself entitled to relief, and
does so in a manner clear enough for the court to understand the objection at a time when
it is in the best position to do something about it. Lankston v. State, 827 S.W.2d 907, 909
(Tex.Cr.App. 1992). But when it appears from the context that a party failed to fairly and
effectively communicate to the trial court the objection, its basis, or the relief sought, the
appellant's complaint has not been preserved. Id. 

 Appellant contends she objected to, and the court agreed to suppress, any
reference to the PBT, (5) as well as any of her post-arrest statements. Regarding the latter,
the record reveals the trial court overruled that portion of the motion. As a result, we
cannot say the court erred in refusing to give an instruction to disregard evidence it
deemed admissible. Next, from our review of the record, it seems appellant posited her
motion to suppress upon the admissibility of the singular statement she made on the cell
phone to her fiance regarding the results of the PBT. Indeed, during the course of the
pretrial suppression hearing, the parties utilized singular articles and nouns in referring to
the challenged statement. For instance, in response to arguments by the State, appellant
explained, "It's not an admission by a party opponent." (Emphasis added). Later, the
following colloquy transpired:

 THE COURT: Well it's just what he told me that she doesn't admit
anything. She just reiterates what this test found.

 THE STATE: Her statement is I blew over point 08.

 THE COURT: Well is that what the test says that she blew on, that she blew
a point 08.

 DEFENDANT: That's correct.

 THE STATE: She blew a point 08 on the breath test.

 THE COURT: Well I don't think she's admitting anything there.

 DEFENDANT: Well it's a statement on the video that's admitting to. That is
the effect - the state gets into evidence an inadmissible test result regardless of
who says it.

 THE STATE: I don't know if you're arguing that it's a result of custodian [sic]
interrogation or what. She wasn't being interrogated. It was --

 THE COURT: She was admitting that she was 08. She just said this testing
said she was 08.

 DEFENDANT: That's correct.

 THE STATE: True.

 THE COURT: Then I'm not going to allow it.

 THE STATE: Okay.

 DEFENDANT: That's the only admission we have.


(Emphasis added).

 The record from the second suppression hearing provides further support for the
proposition that the parties understood the court's ruling regarding redaction to apply to
that singular admission. When the State suggested that two additional references to the
PBT results be redacted, the trial court inquired whether appellant had any objection to that
redaction. Appellant responded that she did not. We agree with the State that there would
have been no need for the court to solicit a response from appellant if its ruling on the
earlier motion to suppress was that the State redact all references to the PBT. 

 In addition to the suppression hearings, the court's understanding of the nature of
appellant's objection was revealed at the hearing on the motion for new trial. In that
proceeding, the following discussion occurred:

 DEFENDANT: Yeah, the videotape, the trial court had previously ruled
that any portions of the exhibit that discussed or referred to the results of the
portable breath, PBT --

 THE COURT: I want you to find in the record where it said "any
portion." And if you would, point that out to me in the Record.

 DEFENDANT: I don't have a copy of the record, Your Honor. 

 THE COURT: Well, you should have had that transcribed for this
hearing. Absolutely.

 DEFENDANT: I do not have that.

 THE COURT: And you said it said that the trial court had previously
ruled that "any portion" --

 DEFENDANT: - that referred to the results --

 THE COURT: - of the PBT device were to be redacted?

 DEFENDANT: Yes Your Honor.

 THE COURT: And the Court --

 DEFENDANT: Yes, Your Honor.

 THE COURT: And I may be wrong, recalls only one portion the Court
was directed to at that time. 


(Emphasis added). Later, the prosecutor reminded the trial court that the only incident she
was ordered to redact was the one involving appellant's conversation with her fiance. 
When the prosecutor explained that she volunteered to redact two additional references
to PBT results, the trial court interjected, "[e]ven though the Court didn't order you to do
that." 

 Though the record is far from the picture of clarity, it is certain that the trial court
understood appellant's objection to go to the singular statement referenced above. 
Because the trial court granted appellant's request to suppress only that statement, she
cannot now be heard to complain additional statements required suppression. In short,
appellant received all that she asked for at the trial court level. Furthermore, because she
did not object to the two remaining references to the results of her breath test contained
on the videotape until after those statements were published to the jury, appellant's
objection was untimely. See Lagrone v. State, 942 S. W.2d 602, 618 (Tex.Cr.App. 1997),
cert. denied, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997). Then, since appellant
failed to inform the trial court in an effective and timely manner of her objections and
entitlement to relief, we cannot say the trial court abused its discretion in refusing to instruct
the jury to disregard any reference to the PBT. Neither can we, for the same reason, fault
the trial court for refusing to grant appellant's motion for new trial. Appellant's first point
of error is overruled.

 By her second point of error, appellant claims the "trial court erred in refusing to give
an art. 38.23 Tx.C.C.P. instruction to the jury in guilt / innocence deliberations." 
Specifically, appellant maintains the instruction was applicable to the HGN test if the jury
found the test was not conducted properly, as well as to her submission to the PBT, and
all statements she made after her arrest if the jury found that they resulted from custodial
interrogation. We disagree. In reviewing the denial of a requested jury instruction, we
must determine, first, whether any error actually exists and, second, the extent of that error,
if any. See Mann v. State, 964 S.W.2d 639, 641 (Tex.Cr.App. 1998). 

 Article 38.23(a), the Texas exclusionary rule, provides that: 

 No evidence obtained by an officer or other person in violation of any
provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case. In any case
where the legal evidence raises an issue hereunder, the jury shall be
instructed that if it believes, or has a reasonable doubt, that the evidence
was obtained in violation of the provisions of this Article, then and in such
event, the jury shall disregard any such evidence so obtained. 


A trial court is required to include an article 38.23 instruction in the jury charge only if there
is a factual dispute as to how the evidence was obtained. Balentine v. State, 71 S.W.3d
763, 773 (Tex.Cr.App. 2002). When there is no conflicting testimony regarding the
relevant facts, no jury instruction is required. Lackey v. State, 638 S.W.2d 439, 454
(Tex.Cr.App. 1982). 

 We first address appellant's contention that the trial court erred in refusing to give
the jury an article 38.23 instruction regarding whether or not the HGN test was properly
conducted. Appellant maintains that, under applicable standards, "it would take at least
thirty-two seconds" to conduct the HGN test, whereas Wolsey testified it took him between
twenty and thirty seconds. According to appellant, that discrepancy gives rise to a factual
dispute as to whether or not the results of the HGN test were legally obtained. Appellant
does not, however, refer us to, and our independent review has not revealed, any state or
federal statutory or constitutional provision mandating a certain period of time for the
administration of an HGN test. Thus, appellant failed to demonstrate a factual dispute as
to how the results of the HGN test were obtained in violation of state or federal
constitutions or laws. As a result, the trial court did not err in refusing to give appellant's
requested instruction under article 38.23.

 We turn now to appellant's contention that the trial court erred in refusing to give an
article 38.23 instruction regarding the voluntariness of her PBT. As support for this
proposition, appellant argued at the charge conference that "[s]he refused to take the test
initially." Our review of the record, including a viewing of the videotape, reveals appellant
did, in fact, refuse to submit to the PBT after explaining she knew it was "[her] right to
refuse." However, after Wolsey acknowledged she was correct in her assertion, appellant
volunteered to submit to the breath test. Wolsey explained that the PBT was "just another
test," the results of which would not change his decision to arrest her since he had
concluded, from her performance of the other field sobriety tests, that she was legally
intoxicated. Despite that explanation, appellant submitted to the PBT. Under these
circumstances, we cannot say appellant raised a factual dispute as to whether or not she 
voluntarily consented to the breath test. Thus, the trial court was under no obligation to
provide the jury with an article 38.23 instruction. 

 Likewise, our review of the record fails to demonstrate that a factual dispute arose
concerning the legality of appellant's post-arrest statements. We surmise appellant's
complaint under this portion of her second point of error to be that she was entitled to an
article 38.23 instruction because: (1) Wolsey failed to apprise her of her rights under
Miranda before questioning her; and (2) any statements she made post-arrest were the
result of custodial interrogation and were, therefore, inadmissible. In stark contrast to the
first assertion, Wolsey testified, and the videotape confirms, that he did, indeed, advise her
of those rights. We discern from the videotape that after Wolsey placed handcuffs on
appellant, he began to read to her the Miranda warnings. At that point appellant
interrupted and informed him, "I know what the Miranda rights are." Notwithstanding,
Wolsey clearly continued to advise appellant of those rights, then questioned whether she
understood them. Appellant responded, "[y]es, I do." On this record, appellant simply
cannot be heard to complain she was not advised of her rights under Miranda. 

 With regard to her second complaint, we recognize that the mere fact that an
individual is in custody at the time she makes inculpatory statements does not, alone,
render the confession involuntary and inadmissible. See Alonzo v. State, 591 S.W.2d 842,
847 (Tex.Cr.App. 1979). Furthermore, there is no evidence on this record demonstrating
that appellant's post-arrest, post-Miranda statements were involuntary or otherwise illegally
obtained. Because there was no factual dispute regarding that issue, the trial court did not
err in refusing to instruct the jury pursuant to article 38.23. Appellant's second point of
error is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice


Do not publish.
1. All references to articles are to the Texas Code of Criminal Procedure (Vernon
Supp. 2004), unless otherwise designated.
2. Appellant did not file a written motion to suppress. Furthermore, because the first
part of the original suppression hearing was, apparently, off the record, we must devise the
basis of appellant's complaint from the portions of the hearing that are before us. 
3. Another of appellant's challenges to the admission of the videotape was that, in
spite of her invocation of her right to counsel, Wolsey continued to question her. That
complaint is not presented on appeal. 
4. We agree with the State that appellant's argument under this point is multifarious. 
See Foster v. State, 101 S.W.3d 490, 499 (Tex.App.-Houston [1st Dist.] 2002, no pet.). 
However, because the point is sufficiently developed in appellant's brief, we may, and in
the interest of justice will, address it. Id.
5. Appellant also appears to assert under this point that the trial court erred in
admitting evidence of the PBT in the absence of a hearing on the reliability of the test
under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125
L.Ed.2d 469 (1993) and Kelly v. State, 824 S.W.2d 568 (Tex.Cr.App. 1992). At the
suppression hearing on the morning of trial, appellant agreed with the State that "[t]he fact
that she took one [a PBT] is admissible." Her only objection at that point was that the
results of the test were inadmissible. However, later in the day, when the State began to
elicit testimony from Wolsey about the PBT, appellant objected and requested "a hearing
under Daubert to determine its scientific feasibility." The court then set a Daubert hearing
for the following morning. Sometime before the hearing took place, however, appellant
"agreed to waive a Daubert hearing." Thus, the court heard no testimony regarding
appellant's complaints under Daubert or Kelly. Because appellant failed to articulate fully
her objection to the admission of the PBT under Daubert and Kelly, and, in fact, waived her
right to a hearing on the issue, she presents nothing for our review. See Lankston, 827
S.W.2d at 909.