NO. 07-03-0029-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 29, 2004

_____


CRYSTAL ANGEL SUGARS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. 1 OF MONTGOMERY COUNTY;

NO. 02-178458-01; HONORABLE CAMILLE DUNN, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**


Following appellant Crystal Angel Sugars's plea of not guilty, a jury convicted her of driving while intoxicated, and the trial court assessed as punishment confinement for 180 days, probated for one year, and a $100 fine. With two points of error, appellant contends the trial court erred in: (1) refusing to instruct the jury to disregard allegedly

inadmissible portions of a videotape offered into evidence by the State and failing to grant a new trial on that basis; and (2) declining to include in its charge to the jury an instruction under article 38.23 of the Texas Code of Criminal Procedure. (Vernon Supp. 2004).[1] We affirm.

On July 26, 2002, DPS Trooper Roger Wolsey stopped appellant for speeding. Upon further investigation, Wolsey determined that appellant had been drinking. After administering a number of field sobriety tests, including horizontal gaze nystagmus (HGN) and portable breath tests (PBT), Wolsey concluded appellant met the legal definition for intoxication and placed her under arrest. The video camera on Wolsey's patrol car recorded his entire encounter with appellant.

Before jury selection on the day of trial, appellant for the first time moved to suppress that portion of the videotape in which she is seen talking to her fiance on her cell phone and admitting to him that "she blew a point 08 on the breath test."[2] The court granted appellant's request and ordered the State to redact that reference from the videotape. The next day, outside the presence of the jury before the videotape was admitted into evidence, appellant requested the trial court to view it "with regard to her

---

[1]All references to articles are to the Texas Code of Criminal Procedure (Vernon Supp. 2004), unless otherwise designated.

[2]Appellant did not file a written motion to suppress. Furthermore, because the first part of the original suppression hearing was, apparently, off the record, we must devise the basis of appellant's complaint from the portions of the hearing that are before us.

request for an attorney."[3]  After the viewing, appellant moved to suppress her post-arrest statements.  In addition, she asserted the PBT was not voluntary and argued "that that also should be suppressed."  After a brief response from the State, the trial court overruled the motion.  The prosecutor then announced that, during that day's viewing of the videotape, she had noticed two other instances in which the results of appellant's PBT were mentioned.  She suggested to the court that, in an abundance of caution, she would have those portions redacted as well.  When appellant voiced no objection to the proposal, the court granted the State additional time to redact those portions of the videotape.

When the trial resumed, the State offered into evidence the redacted version of the videotape and sought to publish it to the jury.  After appellant stated, "I guess I don't have an objection to it [the videotape] being published," the court allowed the jury to watch it.  At the completion of the video, and after the jury had been excused for lunch, appellant made the following remarks:

> I've made some notes, and I noticed at 22:28 [the time stamp on the videotape] the police officer said, You were over .08.  And my understanding of the Court's order was that you had ordered the prosecution to redact *any reference to what the scoring on the tape was or whether it was a failed test or not*.  That's one of the reasons why I agreed to waive a Daubert hearing.
>
> And also at 22:12 on the tape [appellant] says, Well, I guess I'm over the limit.  I submit to the Court that is a direct violation of the Court's order, and I would ask the Court to instruct the jury to disregard that portion of the tape that was not redacted as the Court had ordered to be done.

---

[3]Another of appellant's challenges to the admission of the videotape was that, in spite of her invocation of her right to counsel, Wolsey continued to question her.  That complaint is not presented on appeal.

(Emphasis added). The State responded that appellant's complaint was untimely since she had the opportunity to view the video in its entirety to ensure its compliance with the court's ruling. In addition, the State maintained it had, in fact, complied with the court's directive "to take out the part of the tape where she [appellant] mentioned at the beginning when she was on her cell phone that she was over .08, when she was talking to her fiance on the telephone." The court then denied appellant's requested instruction to disregard.

By her first point of error, appellant complains "the trial court erred and abused its discretion in its refusal to instruct the jury to disregard inadmissible portions of State's Exhibit No. 3 [the videotape], allowing its admission over objection and contrary to the court's prior rulings and further abused its discretion in refusing to grant appellant a new trial based upon this error."[4] We disagree. To preserve error for appellate review: (1) a party must make a timely, specific objection; (2) the objection must be made at the earliest possible opportunity; (3) the complaining party must obtain an adverse ruling from the trial court; and (4) the issue on appeal must correspond to the objection made at trial. See Tex. R. App. P. 33.1(a); Dixon v. State, 2 S.W.3d 263, 265 ( Tex.Cr.App. 1998). An objection is sufficient to preserve error for appellate review if it communicates to the trial court what the objecting party wants and why the objecting party thinks herself entitled to relief, and does so in a manner clear enough for the court to understand the objection at a time when it is in the best position to do something about it. Lankston v. State, 827 S.W.2d 907, 909

---

[4]We agree with the State that appellant's argument under this point is multifarious. *See* Foster v. State, 101 S.W.3d 490, 499 (Tex.App.–Houston [1st Dist.] 2002, no pet.). However, because the point is sufficiently developed in appellant's brief, we may, and in the interest of justice will, address it. *Id*.

(Tex.Cr.App. 1992). But when it appears from the context that a party failed to fairly and effectively communicate to the trial court the objection, its basis, or the relief sought, the appellant's complaint has not been preserved. *Id.*

Appellant contends she objected to, and the court agreed to suppress, *any* reference to the PBT,[5] as well as any of her post-arrest statements. Regarding the latter, the record reveals the trial court overruled that portion of the motion. As a result, we cannot say the court erred in refusing to give an instruction to disregard evidence it deemed admissible. Next, from our review of the record, it seems appellant posited her motion to suppress upon the admissibility of the singular statement she made on the cell phone to her fiance regarding the results of the PBT. Indeed, during the course of the pretrial suppression hearing, the parties utilized singular articles and nouns in referring to the challenged statement. For instance, in response to arguments by the State, appellant

---

[5]Appellant also appears to assert under this point that the trial court erred in admitting evidence of the PBT in the absence of a hearing on the reliability of the test under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Kelly v. State, 824 S.W.2d 568 (Tex.Cr.App. 1992). At the suppression hearing on the morning of trial, appellant agreed with the State that "[t]he fact that she took one [a PBT] is admissible." Her only objection at that point was that the results of the test were inadmissible. However, later in the day, when the State began to elicit testimony from Wolsey about the PBT, appellant objected and requested "a hearing under Daubert to determine its scientific feasibility." The court then set a *Daubert* hearing for the following morning. Sometime before the hearing took place, however, appellant "agreed to waive a Daubert hearing." Thus, the court heard no testimony regarding appellant's complaints under *Daubert* or *Kelly*. Because appellant failed to articulate fully her objection to the admission of the PBT under *Daubert* and *Kelly*, and, in fact, waived her right to a hearing on the issue, she presents nothing for our review. *See Lankston,* 827 S.W.2d at 909.

explained, "It's not *an* admission by a party opponent." (Emphasis added). Later, the following colloquy transpired:

> THE COURT: Well it's just what he told me that she doesn't admit anything. She just reiterates what this test found.
>
> THE STATE: *Her statement is* I blew over point 08.
>
> THE COURT: Well is that what the test says that she blew on, that she blew a point 08.
>
> DEFENDANT: That's correct.
>
> THE STATE: She blew a point 08 on the breath test.
>
> THE COURT: Well I don't think she's admitting anything there.
>
> DEFENDANT: Well *it's a statement on the video* that's admitting to. That is the effect – the state gets into evidence an inadmissible test result regardless of who says it.
>
> THE STATE: I don't know if you're arguing that it's a result of custodian [sic] interrogation or what. She wasn't being interrogated. It was --
>
> THE COURT: She was admitting that she was 08. She just said this testing said she was 08.
>
> DEFENDANT: That's correct.
>
> THE STATE: True.
>
> THE COURT: Then I'm not going to allow it.
>
> THE STATE: Okay.
>
> DEFENDANT: *That's the only admission we have*.

(Emphasis added).

The record from the second suppression hearing provides further support for the proposition that the parties understood the court's ruling regarding redaction to apply to that singular admission. When the State suggested that two additional references to the

6

PBT results be redacted, the trial court inquired whether appellant had any objection to that redaction. Appellant responded that she did not. We agree with the State that there would have been no need for the court to solicit a response from appellant if its ruling on the earlier motion to suppress was that the State redact *all* references to the PBT.

In addition to the suppression hearings, the court's understanding of the nature of appellant's objection was revealed at the hearing on the motion for new trial. In that proceeding, the following discussion occurred:

> DEFENDANT: Yeah, the videotape, the trial court had previously ruled that any portions of the exhibit that discussed or referred to the results of the portable breath, PBT --
>
> THE COURT: I want you to find in the record where it said "any portion." And if you would, point that out to me in the Record.
>
> DEFENDANT: I don't have a copy of the record, Your Honor.
>
> THE COURT: Well, you should have had that transcribed for this hearing. Absolutely.
>
> DEFENDANT: I do not have that.
>
> THE COURT: And you said it said that the trial court had previously ruled that "any portion" --
>
> DEFENDANT: – that referred to the results --
>
> THE COURT: – of the PBT device were to be redacted?
>
> DEFENDANT: Yes Your Honor.
>
> THE COURT: And the Court --
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: And I may be wrong, *recalls only one portion the Court was directed to* at that time.

7

(Emphasis added). Later, the prosecutor reminded the trial court that the only incident she was ordered to redact was the one involving appellant's conversation with her fiance. When the prosecutor explained that she volunteered to redact two additional references to PBT results, the trial court interjected, "[e]ven though the Court didn't order you to do that."

Though the record is far from the picture of clarity, it is certain that the trial court understood appellant's objection to go to the singular statement referenced above. Because the trial court granted appellant's request to suppress only that statement, she cannot now be heard to complain additional statements required suppression. In short, appellant received all that she asked for at the trial court level. Furthermore, because she did not object to the two remaining references to the results of her breath test contained on the videotape until after those statements were published to the jury, appellant's objection was untimely. *See* Lagrone v. State, 942 S. W.2d 602, 618 (Tex.Cr.App. 1997), *cert. denied*, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997). Then, since appellant failed to inform the trial court in an effective and timely manner of her objections and entitlement to relief, we cannot say the trial court abused its discretion in refusing to instruct the jury to disregard any reference to the PBT. Neither can we, for the same reason, fault the trial court for refusing to grant appellant's motion for new trial. Appellant's first point of error is overruled.

By her second point of error, appellant claims the "trial court erred in refusing to give an art. 38.23 Tx.C.C.P. instruction to the jury in guilt / innocence deliberations." Specifically, appellant maintains the instruction was applicable to the HGN test if the jury found the test was not conducted properly, as well as to her submission to the PBT, and all statements she made after her arrest if the jury found that they resulted from custodial interrogation. We disagree. In reviewing the denial of a requested jury instruction, we must determine, first, whether any error actually exists and, second, the extent of that error, if any. *See* Mann v. State, 964 S.W.2d 639, 641 (Tex.Cr.App. 1998).

Article 38.23(a), the Texas exclusionary rule, provides that:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

A trial court is required to include an article 38.23 instruction in the jury charge only if there is a factual dispute as to how the evidence was obtained. Balentine v. State, 71 S.W.3d 763, 773 (Tex.Cr.App. 2002). When there is no conflicting testimony regarding the relevant facts, no jury instruction is required. Lackey v. State, 638 S.W.2d 439, 454 (Tex.Cr.App. 1982).

9

We first address appellant's contention that the trial court erred in refusing to give the jury an article 38.23 instruction regarding whether or not the HGN test was properly conducted. Appellant maintains that, under applicable standards, "it would take at least thirty-two seconds" to conduct the HGN test, whereas Wolsey testified it took him between twenty and thirty seconds. According to appellant, that discrepancy gives rise to a factual dispute as to whether or not the results of the HGN test were legally obtained. Appellant does not, however, refer us to, and our independent review has not revealed, any state or federal statutory or constitutional provision mandating a certain period of time for the administration of an HGN test. Thus, appellant failed to demonstrate a factual dispute as to how the results of the HGN test were obtained *in violation of state or federal constitutions or laws*. As a result, the trial court did not err in refusing to give appellant's requested instruction under article 38.23.

We turn now to appellant's contention that the trial court erred in refusing to give an article 38.23 instruction regarding the voluntariness of her PBT. As support for this proposition, appellant argued at the charge conference that "[s]he refused to take the test initially." Our review of the record, including a viewing of the videotape, reveals appellant did, in fact, refuse to submit to the PBT after explaining she knew it was "[her] right to refuse." However, after Wolsey acknowledged she was correct in her assertion, appellant volunteered to submit to the breath test. Wolsey explained that the PBT was "just another test," the results of which would not change his decision to arrest her since he had concluded, from her performance of the other field sobriety tests, that she was legally

10

intoxicated. Despite that explanation, appellant submitted to the PBT. Under these circumstances, we cannot say appellant raised a factual dispute as to whether or not she voluntarily consented to the breath test. Thus, the trial court was under no obligation to provide the jury with an article 38.23 instruction.

Likewise, our review of the record fails to demonstrate that a factual dispute arose concerning the legality of appellant's post-arrest statements. We surmise appellant's complaint under this portion of her second point of error to be that she was entitled to an article 38.23 instruction because: (1) Wolsey failed to apprise her of her rights under *Miranda* before questioning her; and (2) any statements she made post-arrest were the result of custodial interrogation and were, therefore, inadmissible. In stark contrast to the first assertion, Wolsey testified, and the videotape confirms, that he did, indeed, advise her of those rights. We discern from the videotape that after Wolsey placed handcuffs on appellant, he began to read to her the *Miranda* warnings. At that point appellant interrupted and informed him, "I know what the Miranda rights are." Notwithstanding, Wolsey clearly continued to advise appellant of those rights, then questioned whether she understood them. Appellant responded, "[y]es, I do." On this record, appellant simply cannot be heard to complain she was not advised of her rights under *Miranda*.

With regard to her second complaint, we recognize that the mere fact that an individual is in custody at the time she makes inculpatory statements does not, alone, render the confession involuntary and inadmissible. *See* Alonzo v. State, 591 S.W.2d 842,

11

847 (Tex.Cr.App. 1979).  Furthermore, there is no evidence on this record demonstrating that appellant's post-arrest, post-*Miranda* statements were involuntary or otherwise illegally obtained.  Because there was no factual dispute regarding that issue, the trial court did not err in refusing to instruct the jury pursuant to article 38.23.  Appellant's second point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.